# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**LEXON INSURANCE COMPANY,**
**a Texas corporation,**

        **Plaintiff,**

    **vs.**                                       **Case No.  1:20-cv-00205-JCH-JFR**

**COOPERATIVE EDUCATIONAL SERVICES,**

        **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

On August 10, 2020, Defendant Cooperative Educational Services ("Defendant" or "CES") filed a *Motion for Judgment on the Pleadings Pursuant to Rule 12(c)* (ECF No. 22). In response, Plaintiff Lexon Insurance Company ("Plaintiff" or "Lexon") conceded "the appropriateness of the relief requested by CES" as to Count II (Negligence). Pl.'s Resp. 1, ECF No. 27. Lexon, however, argues that its breach of contract claim should not be dismissed. Having considered the motion, briefs, pleadings, applicable law, and otherwise being fully advised, the Court will grant Defendant's motion for judgment on the pleadings as to Plaintiff's negligence claim (Count II) and will deny the motion as to Plaintiff's breach of contract claim (Count I).

## I.      STANDARD

A motion for judgment on the pleadings provides a mechanism by which the court may dispose of a case or a claim as a matter of law. *See* Fed. R. Civ. 12(c). The standards governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) also govern a party's motion for judgment on the pleadings. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). When considering a motion for judgment on the pleadings, a court should

accept as true and construe in the light most favorable to the non-moving party all well-pleaded facts in the complaint. *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004). For a party to survive a motion for judgment on the pleadings, a complaint must contain sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for relief. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege either direct or inferential allegations on all the material elements of a claim and provide enough factual allegations for a court to infer the claim is plausible. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

According to Rule 12(d), if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Under Rule 12(d), a court has broad discretion whether to accept material beyond the pleadings or to refuse to accept extra-pleading materials and resolve the motion solely on the pleading itself. *See Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998). No conversion is required, however, when the court considers information that is subject to proper judicial notice or documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (quoting *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005)). Plaintiff attached to its complaint documents to which its complaint referred and that are central to its breach of contract claim, and thus, the Court has considered the contents of those documents without converting the motion to one for summary judgment.

## II.     FACTUAL BACKGROUND

On or about June 16, 2016, Eddy County, New Mexico (the "County") awarded a contract (the "Contract") to Century Club Construction, LLC, ("Century") in connection with the CR 23 Rock Daisy Road – Road Reconstruction, Project No.: 2015.1090, Task Order: CES T-16-05 (the "Project"). Compl. ¶ 4, ECF No. 1-1. The Contract for the Project required Century to obtain surety bonds. *Id.* Under New Mexico law, when a construction contract is awarded for more than $25,000, certain performance and payment bonds must be delivered to the local public body. *See* N.M. Stat. Ann. § 13-4-18(A). "If a contractor fails to deliver the required performance and payment bonds, the contractor's bid shall be rejected, its bid security shall be enforced to the extent of actual damages." *Id.*

Century procured and delivered to the County a Performance Bond dated July 8, 2016 (the "Performance Bond") issued by Lexon Insurance Company ("Lexon") in the penal sum of $4,913,925.00 on behalf of Century, as principal, and the County, as obligee. Compl. ¶ 5, ECF No. 1-1. Century also procured from Lexon a Payment Bond dated July 8, 2016 (the "Payment Bond") in the penal sum of $4,913,925.00 in connection with the Project. *Id.*

As a condition to issuing the Performance and Payment Bonds (collectively, the "Bonds"), Lexon required that Century use Lexon's funds control company, Fortress National Group, LLC ("Fortress"), as the agent to receive and disburse all monies on the Project. *Id.* ¶ 6. Consequently, on July 11, 2016, Century entered into a Disbursement Agreement with Fortress in which it, for the benefit of Lexon, assigned to Fortress the right to receive all monies due and payable to Century under the Contract. *Id.* ¶ 7. By its terms, the Disbursement Agreement was made between Century and Fortress. Disbursement Agreement, ECF No. 1-1 at 36 of 51. According to the Disbursement Agreement, Century was required to issue a written directive to the County to pay all Contract funds into a designated account for the benefit of Lexon. Compl. ¶ 8, ECF No. 1. Century was also

required to obtain the written consent of the County, through CES, of the directive that all Contract payments be made directly to Fortress, not Century. *Id.* ¶ 9. CES, under the laws of the State of New Mexico, is a local public body and a governmental instrumentality of the State of New Mexico. Agreed Order 1, ECF No. 21. CES is an agent for the County. *Id.* ¶ 11.

Century obtained written consent via a July 11, 2016 "Irrevocable Directive to Send the Contract Proceeds to Fortress National Group for Deposit into Our Account" (hereinafter, the "Irrevocable Directive"). *See* Irrevocable Directive, ECF No. 1-1 at 51 of 51. The Irrevocable Directive was from Century to CES. *Id.* According to this document, Century entered into the Contract on the Project "under which the County has agreed, in exchange for [Century's] performance, to pay you the proceeds that we have earned ('Contract Proceeds') and you, in turn, have agreed [to] pay us." *Id.* It further stated: "Our bonding company has required us to deposit the Contract Proceeds into a checking account maintained exclusively for this Project in order to pay those providing labor, material and services on the Project." *Id.* It directed checks to be mailed to Fortress. *Id.* According to the Irrevocable Directive, CES's signature indicated its "agreement to make payment in this manner," which "is a condition of our bonding company's execution of our payment and performance bonds on this Project." *Id.* CES's Executive Director signed the Irrevocable Directive on July 11, 2016, acknowledging he was the "Authorized Representative" for CES. *Id.*

CES, as agent for the County, made direct payments to Fortress beginning with the first Project pay application on July 31, 2016. Compl. ¶ 11, ECF No. 1-1. CES made payments on behalf of the County to Fortress for pay applications 1-7 through February 24, 2017. *Id.* ¶ 12. *See also* Answer ¶ 11, ECF No. 5 (admitting that CES "acted on behalf of Eddy County and sent said payment to the purported address of Fortress"). However, beginning on or about May 5, 2017,

CES made payments totaling $1,574,990.39 for pay applications 8-11 directly to Century. Compl. ¶ 13, ECF No. 1-1. Because of the payment to Century, rather than Fortress, suppliers of labor and material provided on the Project were not paid. *Id.* ¶ 14.

On or about January 31, 2018, the County gave notice to Century of the County's declaration of Century's default and termination of the Contract. *Id.* ¶ 15. The County made a demand against the Performance Bond, seeking recovery of certain alleged damages thereunder, on February 14, 2018. *Id.* Lexon incurred costs by making payments to subcontractors and suppliers to complete the Project in accordance with the Contract and Performance Bond, and after offsetting funds, Lexon suffered a loss of $356,106.17 to complete the Project. *See id.* ¶¶ 16-17. Lexon filed suit against CES in state court on January 17, 2020, for breach of contract (Count I) and negligence (Count II). The case was removed on March 9, 2020. Notice, ECF No. 1.

## III.    ANALYSIS

Because Lexon concedes dismissal is appropriate for its negligence claim, the Court will grant Defendant's motion for judgment on the pleadings as to Count II and will focus herein on the issues concerning breach of contract.

### A. Plaintiff Sufficiently Alleged Enough Facts to State a Breach of Contract Claim Based on a Written Contract Supported by Mutual Consideration

Section 37-1-23(A) provides governmental entities with immunity for breach of contract actions unless the actions are based on a valid written contract. N.M. Stat. Ann. § 37-1-23(A). Under New Mexico law, a "legally enforceable contract requires evidence supporting the existence of 'an offer, an acceptance, consideration, and mutual assent.'" *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 6, 107 P.3d 11 (quoting *Heye v. Am. Golf. Corp.*, 2003-NMCA-138, ¶ 9, 80

P.3d 495).[1] "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 16, 118 P.3d 194 (quoting *Heye*, 2003-NMCA-138, ¶ 12). Both sides must provide consideration. *Id.* A promise must be binding; in other words, when "a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration." *Id.* (quoting *Heye*, 2003-NMCA-138, ¶ 12).

Defendant argues that the Disbursement Agreement is between Century and Fortress, not CES, and therefore it cannot be held liable based on that agreement. Regarding the Irrevocable Directive, CES argues that it was not the result of a bargained-for exchange between CES and Century. Defendant argues that there was no offer by Century to undertake any obligation on behalf of CES or the County; instead, it was a unilateral demand that CES and the County consent to an additional obligation not contemplated in the original construction contract. Accordingly, Defendant contends there was no consideration at all to CES or the County for the additional obligations that Fortress and Century sought to impose through the Irrevocable Directive.

By signing the Irrevocable Directive, CES agreed to pay Contract proceeds to Fortress, rather than Century. That promise constitutes consideration. The question is whether Century and/or Lexon likewise provided consideration. Lexon points to the following as mutual consideration for the parties' respective contractual performances: (1) Fortress agreed to serve as the third-party funds control administrator in exchange for a fee; (2) Lexon agreed to issue the Bonds for Century, in exchange for, among other things, the funds control protections; (3) the

---

[1] CES does not deny that Lexon is an intended third-party beneficiary of the Disbursement Agreement between Century and Fortress and of the Irrevocable Directive, and thus, that Plaintiff has standing to bring an action related to those agreements. *See* Def.'s Reply 2, ECF No. 28.

County, through CES, agreed to pay for construction services called for by the Contract in exchange for Century performing on the Contract and posting Bonds as a guarantee of its performance; and (4) CES undertook to pay and administer earned Project payments in exchange for payment of a procurement fee. Pl.'s Resp. 6, ECF No. 27.

CES nonetheless contends that there was no bargained-for exchange benefiting the County because the presentation of the Bonds is a statutory requirement for road construction contracts in this amount. In attempting to fulfill its obligation to present the requisite bonds to the County and in accordance with its obligations under the Disbursement Agreement, Century executed the Irrevocable Directive. The Irrevocable Directive is a written agreement between Century and CES and it is undisputed that Lexon was a third-party beneficiary of that agreement. The Irrevocable Directive expressly stated that CES's agreement to make payment to Fortress "is a condition of [Century's] bonding company's execution of [Century's] payment and performance bonds on this Project." Irrevocable Directive, ECF No. 1-1 at 51 of 51. The Irrevocable Directive also explicitly referred to the Contract and stated that the County agreed to pay proceeds that Century earned to CES and CES agreed to pay Century in exchange for Century's performance on the Contract. *Id.* Lexon alleges that CES was the agent of the County and acted on its behalf in signing the Irrevocable Directive and directing payments to Fortress. *See* Compl. ¶¶ 7, 11-12, ECF No. 1-1. The County required Century to obtain the surety bonds. *Id.* ¶ 4. Although a statutory requirement, the Project could not be completed using Century unless Century obtained the requisite Bonds. Lexon's promise was to issue the Bonds for Century as required by the County in order to facilitate the completion of the Project, which Century promised to do in exchange for payments.

Construing all reasonable inferences in the non-moving party's favor, CES's agreement to submit payments to Fortress completed a condition precedent that enabled Century to secure the

issuance of the Bonds by Lexon. CES is correct that Century already had an obligation to secure bonds or have its bid rejected by law. While securing the Bonds benefited Century in fulfilling its statutory obligation, the facts construed favorably to Lexon suggest that CES undertook the obligation to pay Fortress to facilitate Century's procurement of the Bonds from Lexon and ultimately the completion of the Project by Century for the benefit of the County. Based on the allegations of the complaint and the contents of the documents incorporated into the complaint by reference and central to Plaintiff's claim, the Court concludes that Plaintiff has sufficiently alleged mutual consideration and the breach of a written contract. *Cf. Romero v. Earl*, 1991-NMSC-042, ¶¶ 1, 6-8, 810 P.2d 808 (holding that chiropractor provided sufficient evidence to create genuine issue of fact of consideration to support breach of contract claim against attorney for paying client full settlement proceeds, despite assignment in doctor's lien of sums due chiropractor from settlement proceeds, where chiropractor attested that in consideration for lien, he assured that patient would continue to receive medical care, he would give current and reliable information on patient's medical status to attorney, he would be available as consultant on claim, and he would forbear collecting fees); *Claussen v. First Am. Title Guaranty Co.*, 230 Cal.Rptr. 749, 186 Cal.App.3d 429, 435 (Cal. Ct. App. 1986) ("Upon the escrow holder's breach of an instruction that it has contracted to perform or of an implied promise arising out of the agreement with the buyer or seller, the injured party acquires a cause of action for breach of contract.").[2]

## B.  Plaintiff's Breach of Contract Claim is Not Time-Barred

---

[2] Defendant in its motion acknowledged that CES's Executive Director signed the Irrevocable Directive "to get the Project moving." Def.'s Mot. 12, ECF No. 22. Plaintiff contends that this Court should consider this admission in finding the consideration element met, because the admission undercuts CES's position that the agreement was nothing more than empty additional obligations. Pl.'s Resp. 7, ECF No. 27. The Court, however, did not rely on the admission in this ruling, as the pleadings and other documents attached thereto established the element sufficiently under Rule 12(c).

The parties agree that the two-year statute of limitations period set forth in § 37-1-23(B) applies to the breach of contract claim in this case. *See* N.M. Stat. Ann. § 37-1-23(B) (stating that breach of written contract claim against governmental entity is barred "unless brought within two years from the time of accrual"). Where they part ways, however, is on when the action commenced. CES argues that the clock began to run on May 5, 2017, when Lexon alleges CES first began sending payments to Century rather than Fortress, which was more than two years before Plaintiff filed suit on January 17, 2020. On the other hand, Lexon asserts that its action accrued when it discovered, or in the exercise of reasonable diligence should have discovered, facts forming the basis of the breach. According to Lexon, its cause of action accrued on January 31, 2018, when it received the County's notice of termination of the Contract.

A claim accrues when all the elements of the claim are present, in other words, when the claim becomes an enforceable claim or right. *Salehpoor v. New Mexico Institute of Mining and Technology*, 2019-NMCA-046, ¶ 10, 447 P.3d 1169. For a breach of contract claim, the claim accrues from the date the breach occurs, *id.*, which is generally when one of the parties fails to perform as promised, *id.* ¶ 11.

In support of its argument that the action accrued when the alleged breach occurred on May 5, 2017, Defendant relies on the case of *Village of Angel Fire v. Board of County Commissioners*, 2010-NMCA-038, 242 P.3d 371. In that case, the village entered into a Joint Powers Agreement ("JPA") with the county wherein the village promised to collect the trash of certain county residents in consideration of a certain sum, paid in half semi-annually. *Id.* ¶ 1. Although the county stopped making scheduled payments around July 15, 2004, the county repeatedly promised it would pay as it restructured its finances, causing the village to refrain from filing suit until April 10, 2007. *Id.* ¶¶ 1-2. The district court granted the county's motion for judgment on the pleadings

9

after determining the village's claims for breach of contract, estoppel, and quantum meruit were barred by the statute of limitations in Section 37-1-23(B). *Id.* ¶ 2. On appeal, the New Mexico Court of Appeals held that the village did not sufficiently preserve for its review the question of whether the JPA was an installment contract for which the statute of limitations re-starts each time an installment goes unpaid because it did not sufficiently assert the argument before the district court. *See id.* ¶¶ 4, 15-18. As a result, it held that the statute of limitations began to run when the county first failed to pay, and thus, the village's claim was time-barred. *See id.* ¶¶ 4, 18. The Court of Appeals additionally held that equitable estoppel did not apply to toll the limitations period because at the time the county allegedly promised it would pay, "the Village knew that the JPA was in breach for the County's failure to pay, and absent more, a mere request for forbearance will not block assertion of the statute of limitations." *Id.* ¶ 22.

Plaintiff contends that *Village of Angel Fire* is distinguishable because the village knew about the breach on or around the time of the breach, and thus, the appellate court did not consider whether the discovery rule applied. The Court agrees that *Village of Angel Fire* does not address the issue that is most relevant to this case – whether the discovery rule extends the time for when this breach of contract claim first accrued to the date when the plaintiff asserts it first learned the facts underlying the breach.[3] Instead, as Plaintiff contends, the more relevant case is that of *Quarrie v. New Mexico Institute of Mining and Technology*, NO. A-1-CA-37695, __ P.3d __, 2020 WL 4455806 (N.M. App. Aug. 3, 2020).[4] Therein, the New Mexico Court of Appeals stated that a

---

[3] Defendant also relies on two other cases, *Sena Sch. Bus. Co. v. Bd. of Educ.*, 1984-NMCA-014, 677 P.2d 639, and *Gathman-Matotan Architects & Planners, Inc. v. Dep't of Fin. & Admin.*, 1990-NMSC-013, 787 P.2d 411, which the Court likewise finds distinguishable because they do not analyze the central issue of this case – the applicability of the discovery rule.

[4] Defendant argues that *Quarrie* was decided after this suit and Plaintiff must show that the decision should apply retroactively to this case. *Quarrie*, however, relied on prior case law and there is nothing therein to suggest it was creating a new rule. Moreover, in 2013, the Tenth Circuit construed New Mexico law as applying the discovery rule to breach of contract cases against a non-governmental party, suggesting that the rule in *Quarrie* is not a new rule that must be applied prospectively. *See Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1210-11 (10th Cir.

cause of action accrues "on the date of discovery of the cause of action." *Id.* ¶ 13 (citing *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶ 47, 918 P.2d 1321). "For purposes of Section 37-1-23, an action accrues when 'the claimant discovers, or in the exercise of reasonable diligence should have discovered' facts forming the basis of the breach or cause of action." *Id.* (quoting *Howse v. Roswell Indep. Sch. Dist.*, 2008-NMCA-095, ¶ 17, 188 P.3d 1253). In *Quarrie*, the New Mexico Court of Appeals looked at evidence of when the plaintiff discovered the facts used to support his argument that the settlement agreement that he entered was void. *See id.* ¶ 15. The *Quarrie* court found unavailing that the plaintiff discovered additional related facts supporting his argument months after he first discovered his cause of action. *Id.*

Turning to the case upon which the New Mexico Court of Appeals relied, in *Cummings*, the New Mexico Supreme Court discussed the difference between the discovery rule and the occurrence rule in the context of medical malpractice claims. *See Cummings*, 1996-NMSC-035, ¶ 47. It described how under the discovery rule, the time "does not begin to run until the patient discovers, or reasonably should discover, the essential facts of his or her cause of action." *Id.* In contrast, the occurrence rule "fixes the accrual date at the time of the act of medical malpractice even though the patient may be oblivious of any harm." *Id.* The *Cummings* court held that the Medical Malpractice Act operated as a statute of repose, rather than a statute of limitations, because the plain language of the act (providing that a claim must be filed within three years after the date the act of malpractice occurred) showed the intent to follow the occurrence rule. *Id.* ¶ 48. In contrast, a statute of limitations runs "when the cause of action accrues, the accrual date usually being the date of discovery." *Id.* ¶ 49.

---

2013). Additionally, Defendant contends that *Quarrie* has little precedential value because a petition for writ of certiorari was pending. No writ, however, is currently pending, so that argument is moot.

Applying the reasoning of *Quarrie* and *Cummings* here, the New Mexico Supreme Court would likely conclude that the use of the term "accrual" in § 37-1-23(B) indicates that it is a statute of limitations, not a statute of repose. *See* N.M. Stat. Ann. § 37-1-23(B) ("Every claim permitted by this section shall be forever barred unless brought within two years *from the time of accrual*.") (italics added). Therefore, the clock beings to run on the date of discovery of the cause of action, or in this case, the date of discovery of the breach. Consequently, if Lexon did not know of any breach until January 31, 2018, or have reason to suspect any breach until January 31, 2018, then it timely filed its complaint within the two-year statute of limitations.

At this stage in the proceedings, the Court assumes the truth of the factual allegations of the complaint. The allegations, construed in favor of Lexon, indicate that CES breached the alleged contract on or about May 5, 2017, but that the County did not provide notice to Century of the default and termination of the contract until January 31, 2018, and the County did not make a demand on the Performance Bond until February 14, 2018. *See* Compl. ¶¶ 13, 15, ECF No. 1-1. It is plausible based on the reasonable inferences to be drawn from these facts that Lexon did not discover the breach until January 31, 2018, as it asserts in its response.

Defendant, however, points out that the Disbursement Agreement provided that Lexon had the right to intervene and control the management of funds upon giving Fortress written notice that the Contractor and/or any indemnitors defaulted on any of their obligations. *See* Disbursement Agreement § 5.8, ECF No. 1-1 at 45 of 51. Defendant argues that this provision recognizes that Lexon had a duty to exercise due diligence to protect its rights. Nothing in the complaint, however, establishes that Lexon would have discovered the breach in the exercise of reasonable diligence more than two years prior to when it filed suit or prior to when it received the County's notice.

12

Lexon asserts in its response that it had no claims against its Bonds on May 5, 2017, or even a hint of harm from the misdirected payments until it received the County's notice of termination of the construction contract and Performance Bond on January 31, 2018. If Lexon did not have notice or a hint of harm until January 31, 2018, then Lexon plausibly brought its claim within the statute of limitations. However, because it is somewhat unclear from the allegations of the Complaint when Lexon first learned of the breach or of the facts underlying the breach, the Court will grant Lexon's alternative request to permit it an opportunity to amend its complaint regarding these facts.

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Judgment on the Pleadings Pursuant to Rule 12(c)* (**ECF No. 22**) is **GRANTED** as to the claim for negligence (**Count II**) but is **DENIED** as to the claim for breach of contract (**Count I**). Plaintiff is granted **leave to amend** its complaint to add factual allegations that relate to when Plaintiff first learned of the alleged breach of contract or learned of the facts underlying the alleged breach. Plaintiff must file its amended complaint **within 14 days** of entry of this Memorandum Opinion and Order.

_____

SENIOR UNITED STATES DISTRICT JUDGE